IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

LEVESTER GILLARD                                                                     PLAINTIFF

           v.                          Civil No. 04-4106

AMY KUYKENDALL, Jail Administrator,
Howard County Jail; and
BUTCH MORRIS, Sheriff, Howard
County, Arkansas                                                                     DEFENDANTS

## MEMORANDUM OPINION

Before the undersigned is the civil rights complaint filed by Levester Gillard, currently an inmate of the Arkansas Department of Correction (ADC). Gillard proceeds pro se and *in forma pauperis*.

While detained at the Howard County Detention Center, Gillard contends his constitutional rights were violated. The court has granted in part defendants' motion for summary judgment, dismissing all claims except plaintiff's contention that the policy of requiring inmates to clean their cells every morning violated plaintiff's First Amendment rights. A hearing was conducted on September 11, 2006. At the conclusion of the hearing, the matter was taken under advisement.

At the time of the hearing, the undersigned was serving as a United States Magistrate Judge for the Western District of Arkansas. Since that time, the undersigned has been appointed to serve as a United States Circuit Judge for the Eighth Circuit. An order has been entered pursuant to 28 U.S.C. § 291, authorizing the undersigned to "hold district court in the Western District of Arkansas . . . to complete unfinished business." By virtue of the foregoing, the

proceeding conducted on September 11, 2006, can now be viewed as a bench trial, no report and recommendation is required, and the undersigned has authority to enter judgment on this matter.

## I. Background and Evidence Presented

At the hearing, the court heard the testimony of a number of witnesses. For purposes of discussion, the court will summarize in the first person the testimony given.

### *Levester Gillard*

I am presently detained in the Arkansas Department of Correction Eastern Arkansas Regional Unit. I was convicted in 2004 on rape charges from Howard County, and I am serving a Life sentence. I was detained at the Howard County Detention Center (HCDC) from June 18 or 19, 2004 until November 11, 2004. In September 2004, my probation was revoked, but prior to that time, I was being detained by Howard County on pending charges and pending probation revocation.

When I arrived at the HCDC on June 18, 2004, I was asked several question during intake, but I was not asked about by religion. On the first Saturday of my detention, I refused to clean my cell because it was the Sabbath Day. All of my privileges were taken away, including yard call, library, television, and phone. I filed a grievance, but I did not receive a response to this grievance.

I later made phone calls to people on the outside requesting help. I contacted my mother and Pastor Mark McNeal. I was unable to get help from anyone. Each Saturday that I refused to clean my cell, my privileges were taken away. Each time this happened, I filed a grievance, but I never received responses to these grievances. After I filed the complaint in this case, things got better for a time. By getting better, I mean that they would bring the cleaning supplies

AO72A
(Rev. 8/82)

around at a different time or not take away my privileges when I refused to clean on a Saturday. Later, however, things got worse again. I asked to be transferred to ADC.

One time I requested to go to church services, which were held on a Tuesday. They would not let me go. I filed a grievance. Sheriff Morris then allowed Pastor McNeal to visit me for one hour each Saturday.

I joined New Testament House of Prayer (NTHP) in March 1999. Church services are held on Sunday mornings, Sunday nights, and Wednesday nights. Some services are held on Saturday nights, and choir rehearsals are on Tuesday nights.

I was employed at Tyson foods while I was a member of NTHP. I was not responsible for my scheduling while I worked there. I was also employed at Potlatch while attending NTHP. Again, I could not pick my schedule, so sometimes I worked on Saturdays. While I did not complain about working on Saturdays, I was told that after earning some seniority I would be worked into better shifts.

The HCDC requires inmates to scrub their showers and toilets, mop and sweep the floors, and clean their windows every day. This was required at different times during the day, but normally was required in the mornings.

My religion requires that I take total rest on Saturdays. The only thing the HCDC required me to do on Saturdays was to perform simple chores, but that violated my rights to rest on that day. Before my detention, I would read or sleep on Saturdays; I did not perform chores on that day. I disagree with Reverend Hendrix's statement that making a bed on Saturdays would not violate the requirement of total rest on that day. This disagreement is founded on my personal interpretation of the scriptures. I often fasted on Saturdays, but if I did eat, I would

-3-

either use paper plates which I threw away or would place dishes in the sink to be cleaned on the following day.

When I refused to clean my cell at the HCDC, television, telephone, yard call, and library privileges were taken away, however some of the jailers would permit me to use the telephone. This punishment would last only until the next day when I cleaned my cell. At that time, I did not realize that was standard policy at the jail. I cleaned my cell every day except for Saturday. On days other than Saturday, I spent time eating, sleeping, praying, reading, writing letters, and watching television. I spoke with Sheriff Morris once about my complaints, but I spoke with Ms. Kuykendall on several occasions about it. At no time while I was detained at the HCDC did I break the Sabbath Day. I was punished for not cleaning my cell more than 20 times while detained at the HCDC.

I do not recall there being a problem with ants or other bugs in my cell. I did not have a cellmate while I was detained at the HCDC.

### *Prescott Hendrix*

I am the full-time pastor at New Testament House of Prayer (NTHP) in Nashville, Arkansas. I have been a full-time pastor for 20 years, and have been in the ministry for a period of time longer than that. There are approximately 40 members of the congregation presently. I have known the plaintiff, Levester Gillard, for five years. Gillard is a member of NTHP. As part of doctrine, I teach that the Sabbath Day is a day of rest. The Sabbath Day begins on Friday evening at 6:00 p.m. and lasts until Saturday evening at 6:00 p.m. No work should be performed during this time, unless your "ox is in a ditch" or you must work to feed and care for your family. Housework should be taken care of before 6:00 p.m. on Fridays. A task such as making of one's

bed would not be a violation of this commandment. I know that Gillard rested on the Sabbath Day other than when he had to work to save his job, however I was only around Gillard on Saturdays when there was a church service on those days.

### Pam Gillard

I was married to the plaintiff, Levester Gillard, for seven years. Our marriage terminated on August 23, 2006. While married, Levester did not perform work unless it was required to save his job. While Levester worked at Tyson Foods, he did work on Saturdays. I do not recall Levester performing any chores on Saturday. On Saturdays, we would stay mostly at home, unless we decided to visit Levester's mother, then we would go to her house. Levester did not cook, clean the house, do yard work, or take out the trash while we were married. Levester did attend church meetings on a regular basis. Church services were normally held on Sunday mornings, Sunday evenings, Wednesday mornings, and Wednesday evenings. We also had church services on Friday nights. Levester may have missed church when he had to work.

### Angie Johnson

I have known Gillard for about eight years. While we were both detained at the Howard County Detention Center, I remember Gillard complained about medical care, but I do not recall him complaining about having to clean his cell or complaining about his religion.

### Mary Gillard

I am Levester Gillard's mother. Levester normally called me on Saturdays. Since Levester has been a member of NTHP, I never recall seeing him work on the Sabbath Day. I remember having a conversation with Levester while he was detained in the HCDC. In this conversation, Levester stated that he would be punished when he refused to clean is cell on the

Sabbath Day. His punishment included being denied the use of the phone, being locked in or locked down, and not being allowed recreational time or yard call.

### *Sheriff Butch Morris*

I have been the sheriff of Howard County for 10 years. I have no recollection of intercepting a letter from Gillard to a pastor. I recognize that there are grievances on this issue filled out on our grievance forms, but I do not recall any claims from Gillard about his religion. The jail administrator is responsible for handling grievances. I only get involved when there is a problem that the jail administrator has not handled.

Outside churches are allowed to come into the facility for fellowship on Tuesdays around 1:00 to 2:00 o'clock. I do not recall Gillard being denied the right to attend the Tuesday worship services. I do not disagree with Gillard's assertion that I told him he would have a preacher come and visit him on Saturdays.

The policy of the HCDC is that every inmate is to clean his cell every morning before breakfast. This means mopping the floor and taking out the trash. A trustee would bring the mop bucket around to the inmates. It should not take an inmate longer than 5 minutes to perform this task. If an inmate refuses to clean his cell, he will be denied telephone and television privileges for the day. Each cell has a telephone, and an inmates family may provide a television that is placed in the inmate's cell. No other privileges are taken away when the inmate refuses to clean his cell; the inmate is still permitted to attend yard call for one hour per day. This policy was in place before I became sheriff, and it is in place to keep the facility clean, to prevent infestations, and to prevent any health problems. Cleaning of the cell is the only worked required of an inmate on a daily basis.

AO72A
(Rev. 8/82)

I do not recall ever speaking to Gillard about a religion issue. I do not recall any inmate requesting special treatment for cleaning his cell, and I would be concerned that granting such treatment might lead to confusion and control problems. The daily cleaning requirement is still the policy of the HCDC.

As I am not always present at the HCDC, I cannot say with certainty that the only privileges taken away are telephone and television, however the policy is that only telephone and television privileges be removed.

Even if I had been aware of Gillard's problems with cleaning his cell on Saturday, I would not have changed the policy, nor would I have made an accommodation to have the mop bucket brought around at 6:00 p.m. I do not believe that maintaining personal hygiene is a violation of the Sabbath Day.

*Amy Kuykendall*

I was the jail administrator at the HCDC from 1995 through 2002 and from 2004 through January 2006. Gillard was detained at the HCDC from June 18, 2004 until November 1, 2004, and I was jail administrator at that time. I am currently employed by the Nashville Police Department in Nashville, Arkansas.

There is no question about religious preferences as part of the booking procedures. I was made aware of Gillard's religious preferences through the HCDC grievance procedure and after Gillard filed his first grievance about having to clean his cell. Grievances are collected and answered daily. Inmates do not receive a copy of their grievances until after I have responded to them. When I have responded, a copy is given to the inmate and a copy is placed in the inmate's folder. I cannot say that a copy of every grievance is returned to the inmates, however

AO72A
(Rev. 8/82)

it is the policy and procedure of the detention center that they do receive copies with responses. On June 25, 2004, Gillard filed a grievance. I responded to that grievance. stating that because Gillard had refused to clean his cell, his telephone was turned off. I did not respond to later grievances because they were repetitive of the first. I was aware that Gillard's beliefs were such that he was strictly opposed to working on Saturdays. As I managed the jail, my intentions were to enforce the rules and regulations of the facility.

As far as I am aware, it is still the policy of the HCDC that inmates clean their cells daily. It would take approximately 5 to 10 minutes to clean a cell. This is the only work required of inmates on a daily basis. This policy is in place to keep the cell and the facility clean and for the safety and security of the facility. To clean the cells, a mop bucket is provided to the inmates. A broom and dustpan are available if needed. A scrub brush or toilet brush may be available, however inmates are only required to mop the floor and empty the trash.

If inmates do not clean, their telephone and television privileges are revoked for an entire day. When Gillard refused to clean his cell, his telephone and television privileges were taken away, however he was permitted to attend yard call and the library. When other inmates have refused to clean their cells, they have received the same punishment. I do not recall ever speaking to Gillard about his religion or cleaning his cell.

I recall that Gillard complained about ants in his cell. We called Terminix, and we located 15 to 20 empty juice cartons under Gillard's bed. I asked him to keep this area clean to help prevent infestations of ants.

Gillard was not always allowed to attend church services because of a problem he had with another inmate. If both Gillard and the other inmate signed up for church services, only one

AO72A
(Rev. 8/82)

would be allowed to attend. When Gillard was denied the privilege of attending church services, it was because of concern for Gillard's safety.

Gillard was detained alone in a two-person cell for most of his time at the HCDC. The records reflect that for some time, Gillard was detained with a Greg Gardner. When another inmate was housed with Gillard, that inmate would clean the cell on Saturdays.

I never intentionally denied anyone the right to exercise their religion. I could not have changed the jail's policy concerning cleaning the cells.

### *Exhibits Presented*

The following exhibits were admitted into evidence during the hearing:

Plaintiff's Exhibit 1 -- This exhibit includes a carbon copy of plaintiff's June 26, 2004 grievance in which he complains about not having telephone access because he refused to clean his cell on Saturday. Plaintiff has a notation added to his carbon copy in which he writes that no action was taken in response to his grievance and that on July 3, 2004, he again refused to clean his cell and his telephone was disconnected. He further notes that because he had not received a response from previous grievances, he "did not bother to write another grievance."

Plaintiff's exhibit 1 also includes a copy of the June 26, 2004 grievance with a response written from Amy Kuykendall. In this response, Kuykendall writes that because Gillard refused to clean his cell, his telephone was turned off and that the same result is given to each inmate who has refused to clean his cell.

Plaintiff filed a grievance on July 3, 2004 complaining that it was the second consecutive Saturday that he was not allowed to call relatives or to participate in recreation call because he refused to work on Saturday. This grievance does not have a response.

In a July 21, 2004 grievance, plaintiff states that his attorney had a copy of a letter that Gillard had mailed from HCDC to a friend that the friend never received. Gillard states that the letter was given to his attorney by the prosecutor, and he claims that the jail has been opening and reading his mail. In response, Kuykendall indicates that Gillard's complaint is "noted."

Plaintiff's Exhibit 2 -- This exhibit is an October 19, 2004 grievance from Gillard in which he complains, as relevant to this matter, that he was not permitted to attend church on Tuesday although he had attended church every Tuesday since being detained. He writes that Kuykendall told him that he was not permitted to attend for his safety. Kuykendall responds, "See previous grievance reports."

Defendants' Exhibit 1 -- Defendants presented a copy of the Inmate Rules and Regulations which were amended on September 16, 2002. According to these rules, inmates were to be awakened at 5:00 a.m. and all beds were to be made and the cells cleaned before breakfast was served. Privileges that could be revoked for misconduct included visitation (except religious counsel or an attorney), trustee privileges, telephones (except for legal counsel), television, and radios.

Defendants' Exhibit 2 -- On October 1, 2004, the Inmate Rules and Regulations were amended. The amended rules provide, "Inmates will be awakened at 6:00 a.m. Beds will be made and cells will be cleaned before breakfast is served. Televisions and telephones will not be turned on until the cell is cleaned."

## II. Discussion

Where a claim is brought claiming that a governmental policy or action violates the right to exercise religion, the plaintiff must establish that the action substantially burdens his sincerely

AO72A
(Rev. 8/82)

held religious beliefs. *See Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997). To constitute a substantial burden on a person's free exercise rights, the governmental action must (1) significantly inhibit or constrain conduct or expression that manifests some central tenant of the plaintiff's individual religious beliefs, (2) meaningfully curtail a plaintiff's ability to express adherence to his faith, or (3) deny a person reasonable opportunities to engage in those activities that are fundamental to his religion. *See id.*

If the court finds that the governmental policy does violate the plaintiff's right to exercise his religion, the court then must determine if that infringement is reasonable. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 79, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). "[W]e have often said that evaluation of penological objectives is committed to the considered judgment of prison administrators." *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 342 S. Ct. 2400, 96 L. Ed. 2d 282 (1987). Thus, this reasonable test is less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. *See id.*

In determining whether a regulation is reasonable, courts consider (1) whether there is a valid, rational connection between the regulation and the interest asserted, (2) whether alternative means of exercising the right remain open to the prisoner, (3) the effect the requested accommodation will have on guards, other inmates, and the allocation of prison resources, and (4) whether there is some alternative which will accommodate the prisoner's needs with de minimis impact on the prison's asserted interests. *See Turner*, 482 U.S. at 89-91.

The governmental policy in question here requires inmates of the Howard County

-11-

Detention Center to mop their cells and empty their trash cans each morning. This task takes an inmate no more than 10 minutes to complete. When an inmate refuses to clean, his telephone and television, which is located in his individual cell, is disconnected until the following day. According to the detention center policies, this is the only punishment the inmates receive for refusing to clean, and the telephones and televisions are reactivated the following day if the inmate cleans his cell that morning. This policy is in place to insure that the facility remains clean and sanitary.

Gillard's religious beliefs require that he rest on the Sabbath Day, which is from 6:00 p.m. Friday evenings until 6:00 p.m. Saturday evenings. He refused to clean his cell on Saturday mornings while he was detained, contending that this constituted work and thus violated the commandment that he rest on the Sabbath Day.

We find that the Howard County Detention Center policy requiring inmates to clean their cells daily did not substantially burden plaintiff's sincerely held religious beliefs. The required cleaning was minimal and required less than 10 minutes to complete. As such, the intrusion on plaintiff's observance of the Sabbath Day was negligible. Plaintiff was permitted to spend the remaining 23 hours and 50 minutes in rest, and thus plaintiff's ability to observe the Sabbath Day by resting was not significantly inhibited.

Even if the policy was found to substantially burden plaintiff's adherence to his sincerely held religious beliefs, the policy is a reasonable infringement. As the defendants testified, the policy is in place to insure that the detention facility remains safe and sanitary. The plaintiff maintained excessive numbers of fruit juice containers in his cell, resulting in an infestation of ants. Exterminators were contacted who determined that the juice boxes were attracting the ants.

AO72A
(Rev. 8/82)

Thus the policy requiring all inmates to clean their cells daily carries a valid, rational connection to the interest in maintaining a safe and clean facility. To permit the plaintiff to have an exception to this rule would potentially lead to the request for various exceptions to this requirement by other detainees and undermine the facility's attempt to eliminate the ants. Further, allowing the plaintiff to clean his cell at an alternative time would disrupt the daily procedures of the jail staff in that jail staff would have to remember to provide the cleaning supplies to one inmate at a time that differs from every other inmate in the facility. Finally, since the evidence indicates that insects are attracted when prisoners fail to clean their cells, the failure of a prisoner to do so impacts the entire facility. Therefore, the cleaning policy in place at the Howard County Detention Center is reasonable as it is related to legitimate penological interests.

### III. Conclusion

Accordingly, judgment is entered in defendants' favor on all claims. A separate order in accordance with this opinion will be entered.

DATED this 27th day of October 2006.

/s/ Bobby E. Shepherd
_____
BOBBY E. SHEPHERD
UNITED STATES CIRCUIT JUDGE

-13-

AO72A
(Rev. 8/82)