IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

LEVESTER GILLARD                                                          PLAINTIFF

        v.                    Civil No. 4:04-cv-04106

AMY KUYKENDALL,
Jail Administrator, Howard
County Jail; and BUTCH
MORRIS, Sheriff, Howard
County, Arkansas                                                          DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Levester Gillard, is an inmate in the Arkansas Department of Correction (ADC). He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2007), the Honorable Harry F. Barnes, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

### I. PROCEDURAL HISTORY

Gillard filed this civil rights action against Amy Kuykendall, the jail administrator of the Howard County Detention Center (HCDC), and Butch Morris, the Sheriff of Howard County, Arkansas. He contended his constitutional rights were violated in a number of ways. Summary judgment was granted in Defendants' favor dismissing all claims except Plaintiff's claim that Defendants' policy of requiring inmates to clean their cells every morning violated his First Amendment rights (Doc. 62).

A hearing was conducted on this claim on September 11, 2006. Following the hearing, a memorandum opinion was issued finding in Defendants' favor (Doc. 70). Plaintiff appealed.

On October 24, 2008, the mandate from the United States Court of Appeals for the Eighth Circuit was received. The case was reversed on Plaintiff's claim that his First Amendment rights were violated when he was punished for not cleaning his cell on Saturdays despite his protests that doing so was against his religious beliefs. *Gillard v. Kuykendall, et al,* 295 Fed. Appx. 102, 2008 WL 4425919 (8th Cir. Oct. 2, 2008). The case was remanded for "entry of judgment in favor of Gillard with an award of appropriate relief."

Thereafter, an order was entered (Doc. 83) giving each side an opportunity to submit a brief to the court stating their position on the type and amount of damages they believed should be awarded the Plaintiff. Defendants filed a brief (Doc. 83). Plaintiff did not file a brief.

## II.  HEARING TESTIMONY

The evidence presented at the hearing held on September 11, 2006, indicates Gillard was incarcerated at the HCDC from June 18, 2004 until November 11, 2004. *Memorandum Opinion* (hereinafter *Op.*)(Doc. 70) at page 2. Gillard joined the New Testament House of Prayer in March of 1999. *Id.* at page 2. He testified church services are held on Sunday mornings, Sunday nights, and Wednesday nights. *Id.* Gillard testified his religion required that he take total rest on Saturdays. *Id.* at page 2.

On the first Saturday Gillard was detained, he refused to clean his cell because it was the Sabbath Day. *Id.* at page 1. All his privileges were taken away including yard call, library, television, and phone. *Id.* However, he testified some of the jailers would permit him to use the telephone. *Id.* at page 4. The punishment lasted only until the next day when he cleaned his cell. *Id.* He cleaned his cell everyday except for Saturday. *Id.* Gillard testified he was punished for not cleaning his cell more than twenty times while detained at the HCDC. *Id.* at page 4.

Sheriff Morris testified that an inmate who refuses to clean his cell is denied telephone and television privileges for the day. *Op.* at page 6. He testified no other privileges are taken away and the inmate is still permitted to attend yard call for one hour per day. *Id.*

Amy Kuykendall testified that the policy of the HCDC was for inmates to clean their cells daily. *Op.* at page 8. The cleaning took five to ten minutes. *Id.* If the inmates do not clean, their telephone and television privileges are revoked for the entire day. *Id.*

When Gillard refused to clean, she testified his telephone and television privileges were taken away. *Id.* However, Kuykendall testified he was permitted to attend yard call and the library. *Id.*

### III.  DISCUSSION

I turn to the issue of what relief Gillard should be awarded. Compensatory damages under § 1983 are governed by general tort-law compensation theory. *See Carey v. Piphus*, 435 U.S. 247, 255, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978). In *Carey*, the Supreme Court noted that damages are available under § 1983 for actions "found . . . to have been violative of . . . constitutional rights and to have caused compensable injury." *Id.* (internal quotation marks and citations omitted). The law generally provides that damages may be awarded for injuries such as mental anguish and suffering, personal humiliation, and monetary losses. *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986)(citations omitted). However, damages may not be awarded for the abstract or subjective value of the constitutional right at issue. *See Stachura*, 477 U.S. at 308; *Carey*, 435 U.S. at 248.

The generally applicable rules have been altered when it comes to civil rights actions brought by prisoners. Codified as 42 U.S.C. § 1997e(e), section 803(d) of the Prison Litigation Reform Act of 1996 (PLRA) provides as follows:  "No Federal civil action may be brought by a prisoner

confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

In *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004), a case in which plaintiff argued he had been retaliated against for filing complaints and grievances, the Court of Appeals for the Eighth Circuit ruled that the physical injury requirement of the PLRA "limit[ed] recovery for mental or emotional injury in all federal actions brought by prisoners." The court also noted that Royal could not recover some indescribable and indefinite damage allegedly arising from a violation of his constitutional rights. *Id.* at 724. Section 1997e(e), however, did not bar the recovery of other types of relief such as nominal damages, punitive damages, and injunctive and declaratory relief. *Id.*

Section 1997e(e) clearly bars Gillard from recovering compensatory damages for the mental and emotional injuries he suffered. Furthermore, even if § 1997e(e) did not bar recovery of compensatory damages, Gillard's testimony at the evidentiary hearing failed to establish that he suffered any compensatory damages.

While Gillard is not entitled to an award of compensatory damages, I believe it is appropriate to award him nominal damages on a per violation basis. *Cf. Stevens v. McHan*, 3 F.3d 1204, 1207 (8th Cir. 1993)(Finding it appropriate to utilize a per day method to award damages for improper confinement to administrative segregation or solitary confinement). Accordingly, I will recommend that Gillard be awarded nominal damages in the amount of $1 per day for each Saturday he was punished for not cleaning his cell in violation of his First Amendment rights. His testimony that this happened more than twenty times beginning on June 26 was uncontradicted. However, I note that according to the 2004 calendar there were only twenty Saturdays between the date of his confinement

at the HCDC and his transfer to the ADC.[1]  Accordingly, Gillard's nominal damage award should be limited to $20.  I also recommend that the Defendants be required to pay the district court filing fee of $150 (Doc. 5) and the $455 appellate filing fee (Doc. 76) that have been assessed against Gillard.

I turn to the question of whether an award of punitive damages is appropriate in this case. An award of punitive damages against the Defendants in their official capacities may not be made. Such an award would be the equivalent of an award against Howard County and is precluded by the Supreme Court's ruling in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981).

An award against the Defendants in their individual capacities is appropriate only if serious misconduct by the one or more of the Defendants is shown to exist.  *See Smith v. Wade*, 461 U.S. 30, 52, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).  The purpose of punitive damages is to punish the Defendants and/or deter similar conduct in the future.  *See Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 19-20, 111 S. Ct. 1032, 1044, 113 L. Ed. 2d 1 (1991).  In § 1983 cases it has been said that punitive damages are appropriate "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Walters v. Grossheim*, 990 F.2d 381, 385 (8th Cir. 1993)(internal quotation marks and citation omitted).

Having given careful consideration to testimony elicited at the evidentiary hearing, I conclude Gillard is not entitled to an award of punitive damages.  Although Gillard's First Amendment rights

---

[1] The court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  *See e.g., Horn v. Duke Homes, Div. of Windsor Mobile Homes, Inc.*, 755 F.2d 599 (7th Cir. 1985)(taking judicial notice of the fact that 735 calendar days elapsed between Horn's termination and the judgment in her favor).

were found to have been violated, I do not believe the evidence elicited shows the conduct was motivated by evil motive or intent or involved reckless or callous indifference to Gillard's federally protected rights. At most, the testimony of Morris and Kuykendall showed a failure on their part to comprehend that strict adherence to the policy of cleaning the cells each day might result in a violation of the religious views of Gillard.

### IV.  CONCLUSION

I therefore recommend that Gillard be awarded nominal damages in the amount of $20 against the Defendants. Further, I recommend that the Defendants be required to pay the $150 district court filing fee and the $455 appellate filing fee that has been assessed against Gillard.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 18th day of March 2009.

/s/ Barry A. Bryant  
HON. BARRY A. BRYANT  
UNITED STATES MAGISTRATE JUDGE